IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| Y.K. Enterprises, Inc., a North Carolina Corporation d/b/a Southside Johnny's, and Giovanni Carandola, Ltd., a North Carolina Corporation d/b/a Christie's Cabaret, and Reesaw, Inc., a North Carolina Corporation d/b/a Chester's Premier Gentlemen's Club, and E.K.'s II, Inc., a North Carolina Corporation d/b/a Harper's II, and Carl Edward Collins d/b/a Harper's II Exotic Car Wash, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:07CV0289 |
| | ) | |
| The City of Greensboro, a North Carolina Municipal Corporation, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

Beaty, Chief Judge.

This matter is before the Court on a Motion for Preliminary Injunction [Document #8] filed on April 13, 2007, by the Plaintiffs, Y.K. Enterprises, Inc., d/b/a Southside Johnny's ("Johnny's"), Giovanni Carandola, Ltd., d/b/a Christie's Cabaret ("Christie's"), Reesaw, Inc., d/b/a Chester's Premier Gentlemen's Club ("Chester's"), E.K.'s II, Inc., d/b/a Harper's II ("Harper's"), and Carl Edward Collins d/b/a Harper's II Exotic Car Wash (the "Car Wash") (together "Plaintiffs"). In their motion, Plaintiffs ask the Court to enjoin the City of Greensboro ("the City" or "Defendant") from enforcing Greensboro Development Ordinance § 30-5-2.73.5 ("the Ordinance"), a zoning ordinance which regulates the location of sexually oriented

businesses in Greensboro, North Carolina, which Plaintiffs claim violates their First and Fourteenth Amendment rights. The Court notes that the Ordinance as amended in 2001 then required noncomplying sexually oriented businesses to cease operations in five years following the effective date of the Ordinance. The deadline was extended in November 2006, allowing businesses six additional months to comply with the Ordinance before being required to close on May 7, 2007. Plaintiffs filed their Motion for Preliminary Injunction three weeks before the May 7, 2007, deadline. The Court also notes, however, that Defendant made no attempts to enforce the Ordinance prior to the filing of Plaintiffs' motion or prior to the effective compliance date in the Ordinance. In fact, Defendant has voluntarily withheld any attempts to enforce the Ordinance pending this Court's ruling on Plaintiffs' Motion for Preliminary Injunction.

I. <u>FACTUAL BACKGROUND</u>

According to the facts set forth in Plaintiffs' Motion for Preliminary Injunction, the Plaintiffs own and operate sexually oriented businesses in the City of Greensboro. In 2001, the City amended Section 30-5-2.73.5 of the Development Ordinance to require sexually oriented businesses to be located: (1) in General Business ("GB"), Highway Business ("HB") and Central Business ("CB") zones; (2) no nearer than 1,200 feet from any other sexually oriented business; and (3) no more than 1000 feet from a church, school, day care center, nursery school, public park or residentially zoned property. Greensboro Dev. Ordinance § 30-5-2.73.5 (2001). The Ordinance also required nonconforming sexually oriented businesses to close within five years

2

of the effective date of the Ordinance.  Id.  In February 2004, the City again amended the Ordinance to permit sexually oriented businesses in Heavy Industrial ("HI") zones in addition to the zones previously permitted in the Ordinance.  Greensboro Dev. Ordinance § 30-5-2.73.5 (2004).  Most recently, in November 2006, the City amended the Ordinance to clarify that the sexually oriented businesses in existence in 2001 were subject to the amortization provision requiring nonconforming sexually oriented businesses, with the exception of adult bookstores and adult video stores, to relocate to the appropriate zoning district or close by May 7, 2007. Greensboro Dev. Ordinance § 30-5-2.73.5 (2006).

In response to the most recent amendment to the Ordinance, Plaintiffs filed a Motion for Preliminary Injunction [Document #8] seeking to enjoin the City from enforcing the Ordinance. Plaintiffs claim that the Ordinance impermissibly interferes with the exercise of their First Amendment rights and that it violates the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiffs' motion claims that the Ordinance will result in a reduction of the total quantity of speech in Greensboro; that the City in passing the Ordinance relied on "shoddy evidence" that does not support an alleged connection between sexually oriented businesses and adverse secondary effects; and that the Ordinance fails to provide adequate alternative avenues of expression.  Finally, Plaintiffs claim that the Ordinance violates their equal protection rights by allowing noncomplying adult bookstores and video stores to remain open while all other noncomplying sexually oriented businesses must close. Defendant responds that the Ordinance does not reduce the amount of adult speech in Greensboro; rather, it requires

that sexually oriented businesses relocate to comply with zoning Ordinance. Defendants further argue that there is substantial evidence to support a connection between sexually oriented businesses and negative secondary effects so as to warrant regulation of adult speech. Finally, Defendant attempts to justify the disparate treatment between the Plaintiffs' businesses which must close under the Ordinance if they do not relocate, and noncomplying adult bookstores and adult video stores that may remain open, by highlighting differences between the types of businesses.

II. DISCUSSION

A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 811 (4th Cir. 1991) (alteration in original) (internal quotations omitted). Nevertheless, the Court may grant a preliminary injunction after consideration of the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. Id. at 812; Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 511 (4th Cir. 2002).

Most important among the factors are the irreparable harm to the plaintiff and the potential harm to the defendant. Id.; Hughes Network Sys. v. Interdigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994). If the plaintiff succeeds in making a "clear showing" that irreparable harm will result without injunctive relief, the Court must then balance the likelihood

4

of harm to the plaintiff against the likelihood of harm to the defendant if the injunction is granted. Id.; Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 195 (4th Cir. 1977). If the balance of the harms "tips decidedly in favor of the plaintiff," then a preliminary injunction will be granted when the plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Id. at 812-13 (quoting Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). However, "as the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. at 813. In that case, a plaintiff must show by clear and convincing evidence a strong or substantial likelihood of success on the merits. Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 340 (4th Cir. 2001) (quoting Direx, 952 F.2d at 818).

In this case, Plaintiffs claim that the Ordinance is unconstitutional on its face and as applied in that it violates the Plaintiffs' First and Fourteenth Amendment rights. Specifically, Plaintiffs argue that: (1) the Ordinance significantly reduces the quantity of adult speech available in Greensboro; (2) the City's evidence does not establish a connection between a need for regulation of sexually oriented businesses and adverse secondary effects; (3) the Ordinance fails to provide for reasonable alternative avenues of communication; and (4) the Ordinance impermissibly discriminates between sexually oriented businesses since noncomplying adult bookstores and video stores may continue to operate, while other noncomplying sexually oriented businesses are required to close. The Court has reviewed the briefs, documents, affidavits, and other evidence submitted by the parties in this matter. Having reviewed the issues

5

raised with respect to Plaintiffs' Motion for Preliminary Injunction, the Court concludes that the issues involve numerous factual disputes that are inextricably intertwined with the ultimate merits of the case. Specifically, the "irreparable harm" that the Plaintiffs alleged is inseparably linked to its claim of violations of its constitutional rights. Consequently, "[d]etermination of irreparable harm thus requires analysis of [the Plaintiffs'] likelihood of success." Carandola, 303 F.3d at 511.

An analysis of the Plaintiffs' likelihood of success involves the determination of important factual issues which at this time the Court is unable to resolve. In determining whether a zoning ordinance passes constitutional muster, the government must produce evidence that the regulation "materially advances an important or substantial interest by redressing past harms or preventing future ones." Id. at 515 (quoting Satellite Broad & Communications Ass'n v. FCC, 275 F.3d 337, 356 (4th Cir. 2001)). The Court notes that in support of its argument that the Ordinance is constitutional, Defendant has presented evidence from this jurisdiction and other jurisdictions as relied upon by courts in similar cases to show a substantial interest in preventing negative secondary effects associated with the types of businesses at issue in this case. See Carandola, 303 F.3d at 516 ("[W]here 'nude dancing . . . is of the same character as the adult entertainment at issue in Renton, Young v. American Mini Theatres, Inc., and California v. LaRue,' a governmental entity may rely on the 'evidentiary foundation' set forth in those cases to 'conclude that such nude dancing [i]s likely to produce the same secondary effects' in its jurisdiction") (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 296-97, 120 S. Ct. 1382, 1395,

6

146 L. Ed. 2d 265 (2000) (plurality opinion)). The Court recognizes, however, that "while a municipality's evidence must fairly support the municipality's rationale," the Plaintiffs may respond by "casting direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale, or by furnishing evidence that disputes the municipality's factual findings." City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438-39, 122 S. Ct. 1728, 1736, 152 L. Ed. 2d 670 (2002). In response, the municipality may supplement its evidence to support its justification for the Ordinance. Id. In this regard, both parties have produced extensive evidence to satisfy their respective burdens. However, the City has not yet had the opportunity to respond to the Plaintiffs' attempt to cast doubt on its evidence by supplementing the record presently before the Court. Thus, the evidentiary record as it now stands is not sufficient to resolve the question of whether there is a connection between this regulation of speech and a substantial, independent government interest.

Furthermore, there are disputed facts as to whether the Ordinance as constructed provides for reasonable alternative avenues of communication. The Court notes that Plaintiffs and Defendant have submitted expert reports regarding the number of available relocation sites and have argued extensively in their briefs as to the appropriate factors the Court should consider in determining whether the sites constitute reasonable alternative avenues of communication. The evidentiary record presently before the Court also leaves this question unresolved.

Finally, with regard to the Plaintiffs' argument that certain sexually oriented businesses are treated differently under the Ordinance than adult bookstores and video stores, the Court

recognizes that Defendant has attempted to distinguish Plaintiffs' businesses from noncomplying adult bookstores and video stores which are not required to close under the Ordinance. However, whether Plaintiffs' businesses can be distinguished from adult bookstores and video stores so as to permit the City to treat them differently under the Ordinance is a factual determination that merits further inquiry. Given these circumstances, the Court finds that an evidentiary hearing on these issues would be in order.

However, because a decision regarding the Plaintiffs' likelihood of success would also require a determination of the factual and legal issues the Court would be obliged to resolve at a trial on the merits, the Court finds that such a judgment on the merits would be more appropriately rendered after the parties have had an opportunity for additional discovery. In view of the status of these proceedings, the Court finds that rather than providing a preliminary injunction based upon the same factual and legal issues that would be presented at a trial on the merits, the Court finds for the reasons stated below that it would be more appropriate to schedule an expedited trial on the matter at which all of the relevant issues can be more fully presented. At that time, the same issues that could be raised at an evidentiary hearing on the Plaintiffs' motion can also be raised at an ultimate hearing on the merits.

In such circumstances, Federal Rule of Civil Procedure 65(a)(2) provides that "before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Fed. R. Civ. P. 65(a)(2) (2007). Further, the Fourth Circuit has held that

8

"Fed. R. Civ. P. 65(a)(2) wisely permits the district court in an appropriate case to hear a motion for preliminary injunction and conduct a trial on the merits at the same time. Civil rights cases are especially suitable for such simultaneous development." Singleton v. Anson County Bd. of Educ., 387 F.2d 349, 351 (4th Cir. 1967). Proceeding in this fashion would also avoid duplication of efforts by both the parties and the Court.

III. CONCLUSION

For the reasons discussed above, IT IS THEREFORE ORDERED that a hearing on Plaintiffs' Motion for a Preliminary Injunction [Document #8] shall be CONSOLIDATED with an expedited trial on the merits so as to completely resolve all of the factual and legal issues in this matter. IT IS FURTHER ORDERED that this case is set for trial during this Court's January 2008 Civil Trial Session. FINALLY, IT IS ORDERED that within 10 days of the date of this Memorandum and Order, the parties must submit to this Court their proposed Rule 26(f) scheduling orders, tailored as necessary to meet this expedited trial date. Given that Defendant has voluntarily declined any attempts to enforce the Ordinance either before or after the compliance date of May 7, 2007, the Court will encourage such voluntary delay in enforcing the Ordinance pending the expedited trial scheduled for the January 2008 term of Court.

This, the 21st day of September, 2007.

_____
United States District Court Judge

9